**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

REPAINTEX COMPANY,

     Debtor.     /

Case No.: 25-14334-LMI

Chapter 11
Subchapter V

## PRE-STATUS CONFERENCE REPORT

Debtor-in-Possession, REPAINTEX COMPANY, ("Repaintex" or the "Debtor"), in compliance with section 1188(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), by and through undersigned counsel, files this *Pre-Status Conference Consolidated Report* in preparation and states:

1.    On April 21, 2025, the Debtor commenced this Bankruptcy Case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtor is operating its business and managing its affairs as debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2.    On April 2, 2025, Tarek Kirk Kiem was appointed the Subchapter V Trustee [ECF# 4] (the "Subchapter V Trustee").

3.    A status conference is scheduled for June 10, 2025 at 9:30 a.m. [ECF# 31].

4.    Pursuant to 11 U.S.C. § 1188(c), this report is required to detail "the efforts the Debtor has undertaken and will undertake to attain a consensual plan of reorganization." This report will thus review the background of the Debtor, the case history to-date, the outline of the Debtor's anticipated Chapter 11 plan and the Debtor's efforts to achieve a consensual confirmation. The Debtor relies, in part, upon the *Verified Chapter 11 Case Management Summary* [ECF# 18] ("CMS") filed in this case, and incorporates it by reference herein.



**Background of the Debtor**

5. The Debtor is a general government contractor, specializing in commercial development for the federal government. Prior to the petition date, the majority of Repaintex's work arose under contracts for development and renovations of USAID facilities.

6. During the COVID pandemic, Repaintex was a party to several contracts with USAID. Repaintex experienced a decrease in cash flow due to Covid-19 and significant increased cost of materials. The Debtor continued servicing the USAID contracts and advancing costs, with the assurance of federal government that they would take care of the price increases. Unfortunately, the federal government never came through with its assurances and Repaintex ended up exhausting all of its operational cash reserves. One of the projects was secured by a payment and performance bond (the "Bond"). Although the Debtor offered to complete the work and absorb the losses as long as he was paid on a timely basis for change orders (which still remain unpaid) and the cost of materials, the government instead elected to put a claim on the Bond. The Debtor believes that with the reasonable accommodations Repaintex requested, Repaintex could have and would have completed the contract on time. Instead, USAID hired another contractor. The claims against Repaintex are such that it is improbable that the Debtor could ever meaningfully restructure. Accordingly, the Debtor has filed this case for the purpose of achieving an orderly court-supervised liquidation.

**Case History**

7. The Debtor has sought to employ Agentis PLLC as its general bankruptcy counsel [ECF# 14].



8. On May 1, 2025, the Debtor, through counsel, participated in its Initial Debtor Interview.

9. The Debtor filed its Schedules and Statement of Financial Affairs on May 15, 2025 [ECF# 32].

10. The Section 341 Meeting of Creditors was held on May 23, 2025 at 10:00 a.m. [ECF# 9].

11. The Debtor expects to timely file a Subchapter V, Chapter 11 Plan of Reorganization which is due within ninety (90) days of the order for relief, pursuant to 11 U.S.C. § 1189(b). The Debtor expects to propose a plan that will provide to holders or allowed claims against the estate no less than the value of the Debtor's net disposable income for a period of thirty-six months.

## Efforts to Achieve a Consensual Confirmation

12. At this juncture, the Debtor in unaware of whether it will be able to propose a consensual plan. To that end, Debtor's plan will provide to holders of allowed claims against the estate no less than the value of the Debtor's projected net disposable income for a period of thirty-six months.

13. Based on a preliminary analysis, the Debtor anticipates that its Chapter 11 plan may contain the following classes:[1] Allowed Priority Claims; Allowed Secured Claims; Allowed Ordinary Course of Business Trade Claims which class is comprised of creditors who are necessary to preserve enterprise value, avoid disruption, or otherwise necessary for an effective

---

[1] Nothing in this report shall be construed as an admission to the validity of any claims or classes of claims. The Debtor reserves all rights to object to scheduled claims, proofs of claim and to contest the extent, validity, and priority of secured claims.

3



reorganization; Allowed Administrative Convenience Claims; Allowed General Unsecured claims; and Equity interests.

14. Allowed Priority Claims will be paid in accordance with 11 U.SC. § 1129(a)(9). This class will not be impaired.

15. Allowed Secured Claims will be determined pursuant to Section 506(a) of the Bankruptcy Code and be paid either through liquidation of their respective underlying collateral or through deferred payments that include applicable interest to provide Allowed Secured Claims the present day value of their allowed claims.

16. Allowed Ordinary Course of Business Trade Claims shall be assumed by the Debtor in the ordinary course of business and paid pursuant to customary business terms or periodic pro rata payment arrangements to be determined.

17. Administrative Convenience Claims shall receive a discounted one-time lump sum payment on the Effective Date of the Plan in lieu of receiving periodic payments.

18. General Unsecured Claims shall receive pro rata distribution payments from net disposable income over the life of the Plan after payment in full to Allowed Priority Claims and Allowed Secured Claims.

19. Equity interests shall be retained by existing equity.

20. The Debtor anticipates, with input from the Subchapter V trustee, to engage in discussions with its creditors as the Debtor advances formulation of its Chapter 11 plan. The Debtor reserves the right to amend its plan to account for any agreements by and between the Debtor and its creditors.



I HEREBY CERTIFY that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on May 27, 2025.

          AGENTIS PLLC
          *Counsel for Debtor-in-Possesion*
          45 Almeria Avenue
          Coral Gables, Florida 33134
          T. 305.722.2002

          By:   */s/ Jacqueline Calderin*
                  Jacqueline Calderin
                  Florida Bar No: 134414
                  jc@agentislaw.com

