**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| **REPAINTEX COMPANY,** | Case No.: 25-14334-LMI |
|       **Debtor.**     / | Chapter 11<br>Subchapter V |

### CHAPTER 11 PLAN OF REPAINTEX COMPANY

**Submitted on July 21, 2025 by: Repaintex Company,** *Debtor in Possession*

**Repaintex Company** (the "Debtor" or "Repaintex")[1] as debtor-in-possession, by and through undersigned counsel, submits and proposes the following Plan of Liquidation (the "Plan") pursuant to 11 U.S.C. § 1189, 1190 and 1191:

### BACKGROUND

A.   This case was commenced on April 21, 2025, (the "Petition Date") by the filing of the Debtor of a voluntary petition under Chapter 11, Subchapter V of the Bankruptcy Code (the "Subchapter V Case"). The Subchapter V Case is jointly administered with the affiliate case of Carlos Augusto Acosta pursuant to Order of this Court [ECF# 10]. The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

B.   For additional background facts on the Debtor, including an overview of the Debtor's business, liabilities, and the events precipitating the Chapter 11 filing, the Debtor respectfully refers the Court and parties in interest to the *Chapter 11 Case Management Summary*

---

[1] Terms defined within this Plan, along with the location of respective definitions are listed in Appendix 1. Any capitalized terms not defined in the Plan have the meaning ascribed to them in Section 101 *et seq.* of the Bankruptcy Code.

[ECF# 18].

       C.    <u>Conditions that have compelled the Debtor to pursue an orderly liquidation through the filing of this Subchapter V Case</u>:  During the COVID pandemic, Repaintex was a party to several contracts with USAID.  Repaintex experienced a decrease in cash flow due to Covid-19 shutdowns at the federal government level and significant increased cost of materials. The Debtor continued servicing the USAID contracts and advancing costs, with the assurances of federal government that they would take care of the price increases.  The Debtor's principal, Carlos Acosta, helped to subsidize some of the shortfalls through with personal holdings, including occasional withheld or deferred compensation as needed. Unfortunately, the federal government never came through with its assurances and Repaintex ended up exhausting all of its operational cash reserves. The Debtor's projects were generally secured by payment and performance bonds. Although the Debtor attempted to complete the work and absorb the losses as long as USAID would commit to pay for change orders (which still remain unpaid) and the cost of materials, the government instead elected to seek its remedies against the Debtor's sureties. Upon information and belief, the surety replaced the Debtor instead of allowing the Debtor to complete the work. The Debtor believes that with the reasonable accommodations Repaintex requested, Repaintex could have and would have completed its contracts.  However, with the sureties now seeking indemnification from the Debtor and Mr. Acosta and without the resources to contest the claims of the sureties, the Debtor and Mr. Acosta (individually),  have both sought relief from the Bankruptcy Court.  Given that Repaintex is no longer in a position to acquire the bonds necessary to compete for government bids and without the wherewithal to complete current projects, Repaintex was forced to shut down operations.  Accordingly, the Debtor filed this case (in conjunction with Mr. Acosta's own case) for the purpose of achieving an orderly court-supervised

liquidation.

      D.      <u>Liquidation Analysis</u>.  To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A.**  In a hypothetical Chapter 7 Plan, there will be insufficient funds to pay creditors in full.

      E.      <u>Feasibility</u>. The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. The Plan Proponent has provided projected financial information as **Exhibit B** (the "<u>Plan Projection</u>")**.** The Plan Projection shows that the Debtor as of the Effective Date (the "<u>Liquidated Debtor</u>") will have sufficient projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) to make all payments under the Plan. The final Plan payment is expected to be made on the Effective Date of the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**

### ARTICLE I.  SUMMARY

    1.1    This Plan proposes to pay Allowed Claims no less than the value of Repaintex's projected Net Disposable Income for a period of 36 months. The Plan provides for 3 Classes of creditor claims (including priority, secured, and unsecured) and one Class of Equity interests.

    1.2    **Debtor's Assets.**  The Debtor's pre-petition assets are as detailed in Schedules A and B of the Bankruptcy Schedules [ECF# 32] (the "<u>Assets</u>").

    1.3    **Debtor's Liabilities.** The Debtor's pre-petition liabilities are as detailed in Schedules D, E, F and G of the Bankruptcy Schedules [ECF# 32], as well as any Allowed proofs of claim filed.

### ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS

| CLASSIFICATION | CLASS DESCRIPTION | IMPAIRMENT | VOTE ENTITLEMENT |
|---|---|---|---|
| Unclassified | Administrative Claims and Administrative Expense Claims as described in Article III.2.1 below | Impaired | Presumed to accept and not entitled to vote. |
| Class 1 | Reserved in the event that Priority Claims are filed. | Not Applicable | Not Applicable |
| Class 2 | Secured Claims | Impaired | Entitled to vote. |
| Class 3 | General Unsecured Claims | Impaired | Entitled to vote. |
| Class 4 | Equity | Impaired | Presumed to reject and not entitled to vote. |

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

### ARTICLE III.    TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.1    **General Matter Regarding Classification and Treatment of Claims.**    Except to the extent the holder of an Allowed claim against or Allowed equity interest in the Debtor agree to accept different but lesser treatment, the treatment of Allowed claims and Allowed equity interests shall be as follows:

3.2    **Unclassified Claims**

3.2.1    **Allowed Administrative Claims**.  Administrative Claims include claims for costs or expenses of administering the Subchapter V Case, which are allowed under Section 503(b) of the Bankruptcy Code, fees payable to the clerk of the Bankruptcy Court that were incurred during the course of this Subchapter V Case and claims of estate professionals.  No motion or application is required to fix fees payable to the clerk's office, as those fees are

determined by statute.

    3.2.2    The following list sets forth the **estimated** administrative claims as of the Effective Date:

| Administrative Claimant | Estimated Amount Owed Net of Retainers |
|---|---:|
| Agentis PLLC, Counsel for the Debtor (fees and costs net of retainer) | 25,000.00 |
| Tarek Kiem, Subchapter V Trustee | $5,000.00 |
| LaniganRyan, Debtor's accountant | $5,000.00 |

    **3.3 Classified Claims**

    3.3.1    **Class 1.  Reserved for Potential Allowed Priority Claims.**  The Debtor believes there are no claims entitled to priority under Section 507 *et seq.* of the Bankruptcy Code.[2]

    3.3.2    **Class 2.  Secured Claims**.  Allowed Secured Claims include the claims of Travelers Casualty and Surety Company of America ("Travelers"), pursuant to a prepetition security interest in all of the Assets.  Subject to 11 U.S.C. § 506(c), on the Effective Date, all assets of the Debtor that remain as of the Effective Date, after payment of Allowed administrative Claims, will be transferred and irrevocably assigned to Travelers. Class 2 is Impaired and entitled to vote.

    3.3.3    **Allowed General Unsecured Claims.**  Allowed General Unsecured Claims shall receive a *pro rata* distribution of any funds remaining in the Debtor's accounts after payment in full of Allowed Administrative and Class 1 Claims. The Debtor believes there will be insufficient funds available to pay Allowed Class 3 Claims in full. Class 3 is Impaired and

---

[2] The Debtor's former spouse, Angela Acosta, filed a claim asserting a priority status for alleged "domestic support obligations".  The Debtor is a corporate debtor, not subject to claim under section 507(a)(1) of the Bankruptcy Code. As such, the Debtor intends to object to the foregoing claim.

entitled to vote.

    3.3.4    **Class 4. Equity Interests in the Debtor.** Class 4 consists of Equity Interests of shareholders of the Debtor (listed on the Statement of Financial Affairs). On the Effective Date, the Equity Interests in the Debtor shall be extinguished. Class 4 is deemed to reject and not entitled to vote.

## ARTICLE IV.
## ALLOWANCE/DISALLOWANCE OF CLAIMS

    4.1    **Disputed Claim:** A *disputed claim* is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:

    4.1.2    a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

    4.1.3    no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated unless the claims bar date has expired and no proof of claim has been filed, in which case the claim will be deemed disallowed.

    4.1.4    **Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

    4.1.5    **Settlement of disputed claims.** The Liquidated Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure or submission of an agreed order.

    4.2    **Allowed Claims:** A claim or interest that is Allowed (other than as determined by a final non-appealable order of this Court] includes:

    4.2.2    a proof of claim to which no objection has been filed; or

    4.2.3    a claim listed by the Debtor that has not been designated as contingent, disputed, or unliquidated.

4.3    **Claims Bar Date**: The deadline for filing proofs of claim for entities other than governmental entities was June 30, 2025.

## ARTICLE V.
## FUNDING AND IMPLEMENTATION OF THIS PLAN

5.1    **Omitted.**

5.2    **Sources of Funding Plan Payments.** Prior to the Petition Date, the Debtor had surrendered it business premises (in Virginia) and reduced all of the assets to cash. The Plan proposes to use all of the Debtor's cash to pay Allowed Claims as set forth in Article 3 on the Effective Date. Any remaining unliquidated assets will be surrendered to Travelers on the Effective Date.

5.3    **Debtor's Operation Prior to Confirmation.** The Debtor ceased operations prior to the Petition Date. On or prior to the final hearing to consider confirmation of the Plan ("Confirmation Date"), the Debtor shall prepare its tax returns and comply with the various Orders entered by the Bankruptcy Court during the course of the Subchapter V Case.

5.4    **Events Occurring on or after the Effective Date.** On the Effective Date, the Debtor will disburse all remaining cash in accordance with the provisions of Article III and thereafter conclude operations, except for any remaining obligations required to consummate this Plan and obtain a final decree closing this Subchapter V Case.

5.5    **Documents**. All necessary documents for the implementation of this Plan shall be executed and delivered by the Debtor, when possible, on or before the Effective Date. To the extent that the Debtor or any party in interest herein is unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court. Upon execution and delivery, all such documents shall be binding on the Debtor and Liquidated Debtor and all other parties subject to such documents.

5.6     **Payments.**  On or as soon as practicable after the Effective Date, the Liquidated Debtor shall commence payment of all amounts required to be paid on the Effective Date and according to the schedules provided in Article III of this Plan.

5.7     **Causes of Action.**  The Debtor has reviewed its books and records and is not aware of any potential causes of action accruing to the Debtor or to pursue post-confirmation, other than those listed in Article 5.8 below (which the Debtor expressly reserves herein). Except to the extent any rights, claims, causes of action defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Subchapter V Case: (i) any and all causes of action or claims accruing to the Debtor or its Estate shall remain assets of the Liquidated Debtor (subject to Article 5.1) whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such claims or causes of action have been listed or referred to in the Plan, or any other document filed with the Court, and the Debtor does not waive, release, relinquish, forfeit, or abandon (nor shall it be estopped or otherwise precluded or impaired from asserting) any claims, causes of action, or defenses that constitute property of the estates unless expressly provided for in the Plan. However, because all investigations and inquiries have not yet been completed, it is possible that there may be additional causes of action not mentioned herein, and no party should assume that any release or discharge provision contained in the Plan or the Confirmation Order will bar or otherwise inhibit the Reorganized Debtor from taking any action to prosecute or enforce such additional claims or causes of action, which the Debtor and Reorganized Debtor reserve the right to pursue, including any causes of action arising under Chapter 5 of the Bankruptcy Code.

5.8     **Possible Causes of Action after Confirmation**.

5.8.1  Potential claim(s) against Debtor's former spouse, Angela Acosta, to avoid and/or recover funds paid for which the Debtor did not receive reasonably equivalent value and attorney's fees.

5.8.2  Potential claims against Debtor's former operations manager, Tarek "Kevin" Dagastani, related to a certain prepetition loan transaction that remains unpaid.

5.8.3  Accounts receivable that remain unpaid, and are subject to Travelers's security interest.

5.9  **Post-Effective Date Fees and Expenses.**  From and after the Effective Date, the Liquidated Debtor shall, in the ordinary course of his business, be authorized to pay the reasonable fees and expenses of professionals thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan without further notice or Order of this Court.

5.10  **Determination of Tax Liability**.  The Debtor or Liquidated Debtor may seek determination of any tax liabilities pursuant to 11 U.S.C. § 505.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of note or equity securities under or in relation to this Plan, or the making or delivery of any instrument under, in furtherance of, or in connection with this Plan, including, without limitation, in connection with a transfer of any sale or transfer of any of the Assets, shall not be taxed under any law imposing a stamp or similar tax.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1  **Executory Contracts and Unexpired Leases**.  The Debtor is a party to several executory contracts and unexpired leases (all of which are listed on Schedule G of the Debtors Bankruptcy Petition).

6.2     The Debtor does not intend to assume any executory contracts and unexpired leases as of the Effective Date.

6.3     Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section Article 6.2 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## ARTICLE VII.
## GENERAL PROVISIONS

7.1     **Definitions and Rules of Construction**.  The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the definitions listed in Appendix 1.

7.2     **Effective Date of Plan**.  The Effective Date of this Plan shall take place as soon as practicable on or before fifteen (15) days after the entry of a Final Order confirming this Plan (the "**Confirmation Order**").   If a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

7.3     **Substantial Consummation**. Substantial consummation of this Plan shall be deemed to occur pursuant to the provisions of Section 1101 of the Bankruptcy Code.

7.4     **Severability**.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.5    **Binding Effect**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

7.6    **Captions**.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.7    **Controlling Effect**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.  In the event of any inconsistency between the Plans, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

## ARTICLE VIII.
## DISCHARGE, INJUNCTION, AND EXCULPATION

8.1    **Omitted.**

8.2    **Exculpations.  As of the Effective Date, except for the Debtor's express obligations under the Plan (including guaranties, pledges, and security agreements to be executed post-confirmation), causes of action that do not arise until the Petition Date, and Claims reserved by the Liquidated Debtor to be pursued under the Plan (if any), the Debtor, the Subchapter V Trustee, and their respective professionals shall be subject to the *Barton Doctrine* and are hereby released and discharged from any and all claims, causes of action, demands, liabilities, losses, damages, whether known or unknown, under federal, state or other law, that arose after the Petition Date and prior to the Effective Date in connection with any matter arising from or relating to the Subchapter V Case, except for any acts or**

omissions resulting from fraud, gross negligence, or willful misconduct or contractual obligations of non-Debtor parties.[3]

## ARTICLE IX.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT.

9.1     The Bankruptcy Court shall retain jurisdiction of these proceedings after the Confirmation Date of this Plan until the entry of a final decree pursuant to Bankruptcy Rule 3022 for the following purposes:

9.1.1     To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

9.1.2     To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

9.1.3     To determine all controversies relating to or concerning the classification, subordination, allowance, valuation, or satisfaction of Claims;

9.1.4     To liquidate or estimate for purposes of allowance all contested, contingent, or unliquidated Claims;

9.1.5     To determine the validity, extent, and priority of all liens, if any, against property of the estate;

9.1.6     To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

---

[3] *See, e.g., in re. Winn Dixie Stores, Inc.*, 356 B.R. 239, 261 (M.D. Fla. (2006), *citing, In re Enron Corp.,* 326 B.R. 497, 500 (S.D.N.Y.2005) (affirming bankruptcy court confirmation order which found that a similar exculpation provision was "reasonable and customary and in the best interests of the estates").

      9.1.7       To determine all applications for compensation and reimbursement and objections to Administrative Claims;

      9.1.8       To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor;

      9.1.9       Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

      9.1.10      To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

      9.1.11      To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

      9.1.12      To determine any tax liability of the estate in connection with the Plan, actions taken, distributions, or transfers made thereunder;

      9.1.13      To enforce the terms of the Plan including any and all releases and injunctions created pursuant to the terms of the Plan;

      9.1.14      To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

      9.1.15      To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

      9.1.16      To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

# ARTICLE X.

## MODIFICATIONS TO THE PLAN

The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date without leave of the Bankruptcy Court. After the Confirmation Date, parties in interest may, with Bankruptcy Court approval and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

# ARTICLE XI

## AMENDMENT OF CLAIMS

Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court.

Respectfully submitted on July 21, 2025 by:

**Repaintex Company**

_____
Carlos A. Acosta, its president

/s/ Jacqueline Calderin
Jacqueline Calderin
jc@agentislaw.com
Florida Bar Number 134414
Agentis PLLC
Attorneys for the Debtor in Possession
45 Almeria Avenue
Coral Gables, FL 33134
T. 305.722.2002

# Appendix 1

Capitalized terms not defined in the Plan have the meaning ascribed to them in Section 101 *et seq.* of the Bankruptcy Code.  The following is a list of terms defined within this Plan, along with the location of respective definitions:

| Defined Term | Location |
| --- | --- |
| Administrative Claims | Article III.2.1 |
| Allowed | Article 4.2 |
| Allowed Claim(s) | Article 4.2 |
| Assets | Article 1.2 |
| Claims Bar Date | Article 4.3 |
| Confirmation Date | Article 5.4 |
| Confirmation Order | Article 7.2 |
| Debtor | Preamble |
| Disputed Claims | Article 4.1 |
| Effective Date | Article 7.2 |
| Equity Interests | Article II |
| Final Order | Article 6.4 |
| General Unsecured Claims | Article II |
| Repaintex | Preamble |
| Liquidated Debtor | Background § D |
| Liquidation Value | Article 1.9 |
| Petition Date | Background § A |
| Plan | Preamble |
| Plan Projection | Background § D |
| Priority Claims | Article II |
| Projected Net Disposable Income | Article 5.2.1 |
| Subchapter V Case | Background § A |
| Substantial Consummation | Article 7.3 |
| Travelers | Article 3.3.2 |

**Exhibit "A"**

| Assets | Value of Debtor's Interest | Liens[4] or Exemption values | Net to unsecured creditors of the estate |
|---|---|---|---|
| Cash on Petition Date | $149,652 | 0 | $149,652 |
| Accounts Receivable | Unknown | 100% | $0 |
| Various payment and performance bonds | Unknown | 100% | $0 |
| Notes Receivable | $583,260 | $583,260 | 0 |
| Claim against Angela Acosta | Unknown | 0 | unknown |
|  |  |  |  |
| TOTAL | $1,922,186 | $1,738,217 | $149,652 |
| **Claims** |  |  |  |
| Less legal fees |  |  | -25,000 |
| Less Subchapter V trustee fees |  |  | -5,000 |
| Less Debtor's Accountant |  |  | -5,000 |
| Less Chapter 7 fees and costs |  |  | -37,500 |
| Less Travelers' Allowed Claim |  |  | -17,000,000 |
| **Liquidation Value** |  |  | **$0** |

---

[4] Any liens listed herein are held by Travelers.

# Exhibit "B"

**Repaintex Plan of Liquidation**
**Effective Date Waterfall Analysis**

|  | Effective Date |
|---|---:|
| **Estimated Cash on hand** |  |
| DIP Account | $ 140,000 |
| SubV trustee postpetition retainer | $ 5,000 |
| Agentis - prepetition retainer | $ 12,062 |
| **Available for Effective Date Distribution** | $ 157,062 |
|  |  |
| **Estimated Uses** |  |
| **Administrative Claims** |  |
| Ch 11 legal - Agentis | $ 30,000 |
| Ch 11 SubV Trustee | $ 7,500 |
| Accountant | $ 7,500 |
| **Total Administrative Claims** | $ 45,000 |
|  |  |
| **Estimated Cash available for  - Class 2** | $ 112,062   Note 1 |

**Note 1: Does not include any recoveries from accounts receivable, notes receivable, or Retained Causes of Action (all of which will be assigned to Travelers on the Effective Date)**